Comstock, Ch. J.
 

 (Dissenting.) While the statutes of usury are in force, they ought to be faithfully interpreted and admin*
 
 *228
 
 istered by tire court. The decision of this case will, I am apprehensive, go Sr to overthrow them. I therefore dissent, •and proceed, briefly as may be, to state my reasons.
 

 The plaintiff loaned her money through her agent, Williams. He was wholly and exclusively her agent, because he performed no service Whatsoever for the borrower. He performed, indeed, no act which is not involved in every loan. He formed the mental conclusion to accept the note of the borrower and his sureties: he accepted the note and advanced the money. There was 'simply a process of the mind or will, and the act of lending. Without these circumstances no loan was ever made. If §25, or any other sum beyond lawful interest, can be charged to the borrower in such a case, there is very little left of the •laws against usury.
 

 It is too plain for argument, and, indeed, it is. not denied, •that -the contract was usurious, provided the plaintiff had authorized her agent to contract precisely as he did. The agreement in brief was, that the agent should lend §400 on the note •of the borrower, with four other signers as sureties: that thé' note should be given on interest; and that the agent should be paid the sum of §25, under the name Of-an'attomey’s fee. The loan was constimmated- on "these terms. The note was delivered, the $400 advanced, -and $25 was paid back to the plaintiff’s agent. It is not pretended that the name given to this exaction aliens the nature of the transaction. It was called a fee, but the agent earned no such fee. -He did nothing which is not done by every ¡person who lends money on a note. I fully concede that the'agent of a money lender may also be employed to perform services for a borrower, and that such services may be lawfully compensated. The examination of a borrower’s title, where landed security is given, is a familiar example of this sort. But hot a; single authority can be found which holds that compensation can be claimed for services where the lender or -his agent simply accepts a note and advances the money. More need, not be said on this point, because, in the very-full and-able argument before-us, no attempt was made • •to'sustain -the-eontraot-onfthis theory. -Ho plea-of services has
 
 *229
 
 been interposed to shield the transaction from the condemnation of the statute.
 

 It is equally plain that the validity or invalidity of the contract cannot depend on the mere mode and form in which the business was closed. In fact the $400 was advanced, being the full face of the note, and the borrower afterwards paid the bonus of $25, as he had agreed. The legal as well as the practical effect of this was precisely the same as if the $25 had been retained in the first instance and only $375 advanced. The result was that the borrower received only the last mentioned sum for his note. I am not able to see that the possession of the whole sum for a few moments or a few hours could benefit him, so long as he was to pay back a part of it. The usury was in the agreement to pay a bonus over and above lawful interest. Whether it should be deducted out of the fund loaned at the moment of the loan, or should be paid another day, could make no difference. Devices of this sort never before deceived any court.
 

 I think it material next to observe, that only one contract was made which embraced the whole transaction. There was no agreement, between the plaintiff through her agent, and the borrower, to lend $400 at lawful interest, and then a separate and distinct agreement between the agent and the borrower for the extra $25. It was all included in one contract, The agent said in substance, “ I will lend you the $400 if, besides the legal interest which you pay to my principal, you will pay to me the sum of $25.” This was a single indivisible proposition, and as such it was accepted by the borrower. In consideration of the loan he agreed to repay it at a certain day with interest, and he agreed also to pay $25 more to the lender’s agent. Here was one consideration and one agreement. That agree-: ment might all have been expressed in one or in two writings, or it might have been without any writing. In fact, one of these promises was evidenced by a promissory note, the other rested in paroi. These circumstances are immaterial. There was but one original agreement, which included the wholp subject.
 
 *230
 
 ■Where there is usury at the root of a transaction, it has never before been thought that the merely formal separation of the borrower’s contract into different parts could take the case out of the statute. If the business had not been done through an agent, nót a doubt would be entertained, because nothing is clearer in principle or better settled by authority than" that contracts are equally usurious whether the excessive interest be paid down or- only agreed to be paid, and whether the payment be promised in the same instrument with the principal debt or in a collateral 'agreement, oral or written. The tést *" question always is, whether the agreement for the loan includes more than lawful interest to be reserved or taken in any manner whatsoever. Authorities need not be cited in support of a proposition so well understood.
 

 The contract in question; therefore, had all the elements of usury unless it can be saved from condemnation by the single circumstance that the agent had no authority from his principal to lend her money at a higher rate of interest than is allowed by the law of the State. "Upon this precise ground the whole argument for the plaintiff rests. There is no evidence in the case that she 'authorized her money to be lent in violation of the statute; and I admit such an authority ought not to be presumed from the mere act of the agent himself. But what I have to say on this point is, that the assumed defect in the agent’s power to make just such a contract as he did make does not alter the contract itself. Such a circumstance cannot transform that into an innocent and valid agreement which in its own essential nature and judged by its own terms was usurious and void. The agreement was the same whether we regard it as made with or without due authority. It was a plain contract for more than seven per cent interest, and it does not become a different contract although we admit that the plaintiff did not authorize it to be made just as it was in. fact made. ■ If her agent exceeded his authority and thereby subjected her to' loss she has' a plain remedy against him. So on the same ground she may, I do not doubt, repudiate the contract altogether and demand and recover from the borrower her money
 
 *231
 
 which went into his hands without her' consent. This remedy was open to her the moment the borrower got possession of the fuud in this unauthorized manner. It is a remedy open to her now. But such is not the theory of her action. She sues,, not in repudiation of the unlawful contract but upon the very contract itself, and she claims to hold not only the principal maker of the note but four other persons who were sureties merely, and, therefore, never had any money which belonged to her. In short, she asserts the validity of the contract. If she fails in that assertion she cannot recover. We have shown that it was an illegal and void contract, judged by its own nature and terms and according to every test hitherto known*
 

 It is argued, however, that as the agent’s exaction of $25 was not authorized by the plaintiff, she can-disavow that part of the transaction and still recover on the note which represents, it is said, the sum actually lent. But the note represents more than the sum lent. It is true that the borrower in form received the $400 expressed in the note, but this was subject to a condition that he should presently pay back to the agent the sum of $25, and he paid it back accordingly. The sum really loaned was, therefore, only $375. That, stripped of all disguise, was the true consideration of the promise made by the borrower and his sureties to pay $400 and the interest thereon.
 

 But again, how can the plaintiff divide an entire contract, as this was, into two parts, and so adopt one part while she rejects the other. If an agent contracts in excess of his authority, the principal is not bound at all and may repudiate the whole. But if he adopts a part he adopts the whole. Mr. Justice Story lays down the rule thus, and he cites many, authorities to support it: “The principal cannot, of his own mere authority, ratify a transaction in part and repudiate it as to the rest. He must either adopt the whole or none. And hence the general rule is declared that where a ratification is established as to a part, it operates as a confirmation of the whole of that, particular transaction of the agent.” (Story on Agency, § 250.) The result of this rule is that the plaintiff, if she insists upon
 
 *232
 
 the contract at all, must take it with all its vices and infirmities. She is not permitted to say that the usury is one particular part or clause of the agreement which she disavows, and' that she will take the benefit of the residue which is innocent and lawful. I have shown, I think,- the unity of this contract. Its Substance and nature were the same as though the borrower had by the very terms of his note promised not only to pay the $400 and interest but also the $25 which the agent received. Could the principal recover on such a note by rejecting from the contract one of its clauses which contaminated the whole ? If usury can thus be eliminated from contracts, borrowers are henceforth at the mercy of agents, to whose exactions no limits can be assigned. The principal has only to disavow the extortion, and the contract, which in its very letter is condemned by the statute, become a lawful one. The legislature has declared that “ all contracts whatsoever, whereupon or whereby there shall be -reserved or taken or secured to be reserved or taken any Sum or value for the loan or forbearance of money,” ■greater than the prescribed rate of interest, “shall be void.” (1 R. S., 772, § 5.) This enactment makes no distinction between the principal and the agent, and none can be found in the analogies of the law. We have held, at this very term of the court, that a principal is liable for the representations of his agent made in the course of a negotiation for the sale of land, although they were made without his authority or knowledge. We thought it plain that the principal could escape the consequences of his agent’s 'conduct only by disavowing the transaction altogether, which he had not done.
 
 (Bennett
 
 v.
 
 Judson, post, p.
 
 238.)
 

 Very little need be said in regard to the authorities cited in support of this transaction. ■ In general, they do not bear upon ■the question. For example, the case of
 
 Bush
 
 v.
 
 Buckingham
 
 (2 Ventris, 83), turned upon a mistake of the scrivener in preparing the' bond by which the loan was secured. The bond sued upon reserved.on its face more than lawful interest on the sum loaned, and the obligor pleaded that it was corruptly agreed, &c. The replication took issue on- the corrupt agree-
 
 *233
 

 meat,
 
 and showed that the agreement as made between the parties was free from usury; that a scrivener was employed to draw the bond and that too large a sum was inserted
 
 ex errore servptovis,
 
 that is by the scrivener’s mistake. The replication was held good. Now, no one ever supposed that usury could be alleged where the excessive interest was reserved in the security, or deducted from it, in consequence of an innocent mistake, either of the principal parties or an agent. Several of the cases relied upon belong to this class, and they do not require any additional comment. Other authorities have been referred to for the purpose of showing that principals are not bound by the unauthorized acts of agents; that to constitute usury there must be a corrupt agreement: that there must be an
 
 aggregatio rmniium
 
 or meeting of the minds of the parties, &c. These are truisms which no one disputes; but they have little to do with the question before us. There can be no question about an agent’s authority when the principal himself insists upon the contract. If the agent is guilty of fraud or usury, the principal must either disavow the dealing or take all the consequences. He cannot make a different contract by exscinding the vices which enter into and form a part of it. This is the difficulty which has not been overcome by argument or authority.
 

 Believing that this is a plain case of usury, I think the judgment should be reversed and a new trial granted.
 

 Denio and W elles, Js., concurred in this opinion.
 

 Judgment affirmed.